**Joel LIRA, Plaintiff–Appellee,**

v.

**SHELTER INSURANCE COMPANY, a/k/a Shelter Mutual Insurance Company, a/k/a Shelter General Insurance Company, a/k/a Shelter Life Insurance Company, Defendant–Appellant.**

**No. 93CA0663.**

Colorado Court of Appeals, Div. III.

Dec. 29, 1994.

Rehearing Denied Feb. 2, 1995.

Certiorari Granted Oct. 2, 1995.

Dallas, Holland & O'Toole, P.C., Neil D. O'Toole, Denver, for plaintiff-appellee.

Levy & Lambdin, P.C., Suzanne Lambdin, Michael T. Sabin, Scott P. Landry, Englewood, for defendant-appellant.

Opinion by Judge JONES.

Defendant, Shelter Insurance Company, appeals the judgment entered on a jury verdict in favor of plaintiff, Joel Lira, on a claim for bad faith failure to settle a previous personal injury claim against Lira. We reverse.

Lira was the defendant in a previous personal injury action arising from Lira's negligence in leaving his truck parked in a traffic lane of Interstate 25 in Denver and proceeding to a bar without taking precautions to warn oncoming traffic about his abandoned truck. During pretrial proceedings in the personal injury case, the injured plaintiff in that case offered to settle the claims against Lira for the limits of his policy with Shelter, in the amount of $50,000, with no reference to punitive damages. Shelter, as Lira's insurance carrier, refused, on behalf of Lira, to settle the matter for policy limits. As the trial approached, Shelter submitted a $10,000 offer of judgment.

The jury in the personal injury action returned a verdict against Lira in the amount of $87,300 in actual damages and $87,300 in punitive damages. The trial court reduced Lira's liability for actual damages to $43,650 in accordance with the pro rata liability statute. Section 13–21–111.5, C.S.R. (1987 Repl. Vol. 6A). On appeal, the supreme court also reduced the punitive damages award to $43,-650 in accordance with the punitive damages statute. *Lira v. Davis,* 832 P.2d 240 (Colo. 1992).

Shelter, on behalf of Lira, paid the amount due to satisfy the compensatory damage award plus interest and costs, all of which did not exceed policy limits. Shelter, however, refused to pay the punitive damage award entered against Lira, asserting that such damages were not covered under the policy.

Lira then instituted this suit against Shelter for bad faith breach of insurance contract based on Shelter's failure to settle the underlying action. The only loss alleged by Lira in the bad faith claim was the $43,650 in punitive damages, plus interest, awarded against him in the personal injury case. The jury in this case returned a verdict against Shelter in the amount of $58,000, which was approximately the amount Lira owed in punitive damages, including interest, on the judgment in the underlying action.

Shelter contends that it may not be held liable as an insurer for bad faith failure to settle when the only damages claimed are the outstanding punitive damages against the insured in the underlying suit. We agree.

Initially, we note that, on appeal, the parties disagree as to the basis on which Lira claims Shelter was acting in bad faith. Shelter claims that, in the trial court, Lira relied solely on Shelter's refusal to settle the previous case for policy limits. Lira, however, has set forth a host of acts and omissions by Shelter's representatives which he claims amount to a bad faith handling of the previous case.

The record reflects that Shelter is correct in its interpretation of Lira's claim. One jury instruction specifically informs the jury that it may find for Lira only if it finds that "[t]he defendant acted unreasonably in fail-

ing to settle the suit of *Davis v. Lira, et al.* for or within policy limits." In addition, on direct examination, the only damages Lira attempted to prove were the outstanding punitive judgment against him based on his willful, wanton, and reckless behavior. Furthermore, on cross-examination Lira admitted that he had not lost his job, had not seen any psychiatrists or psychologists, had not experienced nightmares, and, in fact, had not suffered any negative consequences, other than the punitive damages, as a result of the verdict.

Therefore, the issue before us, a matter of first impression in this state, is whether an insurance company, as a part of the damages to its insured because of its breach of insurance contract, based on failure in good faith to settle an underlying action, may be made to pay the punitive damages awarded against its insured when the insured is found liable and assessed both compensatory and punitive damages. We hold that the insurer may not be held liable for such damages.

■ Certainly an insurer may be liable for any compensatory damages awarded against its insured in excess of policy limits after it has refused, in bad faith, to settle. *Aetna Casualty & Surety Co. v. Kornbluth,* 28 Colo. App. 194, 471 P.2d 609 (1970). In *Aetna,* a division of this court recognized that an insurer may violate a duty to its insured by refusing in good faith to resolve a claim when it is highly probable that, absent a settlement, the insured will be subjected to personal liability for compensatory damages which exceeded policy limits. However, only the New York courts, the Ninth Circuit, and the Tenth Circuit have addressed whether a bad faith claim can be based solely on an underlying verdict for punitive damages.

In *Soto v. State Farm Insurance Co.,* 83 N.Y.2d 718, 613 N.Y.S.2d 352, 635 N.E.2d 1222 (1994), the court acknowledged that New York law and public policy precluded an insurer from issuing coverage for punitive damages. *See Hartford Accident & Indemnity Co. v. Village of Hempstead,* 48 N.Y.2d 218, 422 N.Y.S.2d 47, 397 N.E.2d 737 (1979). The policy underlying this rule of law was found to be so strong that the New York courts have even voided coverage for punitive

damages when an insured had paid extra premiums for such protection. *Public Service Mutual Insurance Co. v. Goldfarb,* 53 N.Y.2d 392, 442 N.Y.S.2d 422, 425 N.E.2d 810 (1981).

The *Soto* court reasoned that this same public policy must logically preclude a cause of action against an insurer for bad faith when the claim was based solely upon punitive damages awarded against the insured. The court stated that "regardless of how egregious the insurer's conduct has been, the fact remains that any award of punitive damages that might ensue [at trial] is still directly attributable to the insured's immoral and blameworthy behavior." *Soto v. State Farm Insurance Co., supra,* 613 N.Y.S.2d at 355, 635 N.E.2d at 1225.

Both the United States Court of Appeals for the Ninth Circuit, in *Zieman Manufacturing Co. v. St. Paul Fire & Marine Insurance Co.,* 724 F.2d 1343 (9th Cir.1983), and for the Tenth Circuit, in *Magnum Foods, Inc. v. Continental Casualty Co.,* 36 F.3d 1491 (10th Cir.1994), have likewise held that a state's public policy prohibiting coverage for punitive damages also precludes recovery of those punitive damages through a bad faith claim against an insurer.

■ The purpose of punitive damages is to punish the defendant for his acts and to deter similar conduct in the future. *Seaward Construction Co. v. Bradley,* 817 P.2d 971 (Colo.1991). Likewise, public policy prohibits insurers from assuming any obligation for indemnity of punitive damages. Otherwise, the legal and social purposes for punitive damages would be defeated. *Universal Indemnity Insurance Co. v. Tenery,* 96 Colo. 10, 39 P.2d 776 (1934).

Here, since punitive damages are plainly outside the scope of coverage provided by Shelter to Lira, and public policy strictly prohibits an individual from insuring against such liability, no claim can exist against Shelter for a breach of good faith when Lira's only claimed damages are the punitive damages awarded against him in the underlying suit. A breach of good faith by Shelter cannot invoke coverage that does not and legally cannot exist.

■ Despite our ruling today, we reiterate that the law in Colorado imposes a duty on the insurer fairly to consider the insured's interests and potential personal liability in addition to its own interests when negotiating settlements. *Bailey v. Allstate Insurance Co.*, 844 P.2d 1336 (Colo.App.1992). The mere presence of a claim for punitive damages against an insured does not abrogate an insurer's obligation to act in good faith. *Magnum Foods, Inc. v. Continental Casualty Co., supra.*

■ We also recognize that, in a suit for bad faith, an insured may recover general damages for mental distress, loss of income or job, impairment of credit rating, worsening of physical condition, and various economic losses, including attorney's fees and costs. *See Travelers Insurance Co. v. Savio*, 706 P.2d 1258 (Colo.1985); *Farmers Group, Inc. v. Trimble*, 658 P.2d 1370 (Colo.App. 1982), *aff'd*, 691 P.2d 1138 (Colo.1984); *Farmers Group, Inc. v. Trimble*, 768 P.2d 1243 (Colo.App.1988); *Martin v. Principal Casualty Insurance Co.*, 835 P.2d 505 (Colo. App.1991).

■ Likewise, an insured may recover punitive damages against his insurer for bad faith when it is shown that the insurer's actions were willful and wanton, or in reckless disregard of the insured's rights and feelings. *Surdyka v. DeWitt*, 784 P.2d 819 (Colo.App.1989). However, when as here, the insured's only claimed damages are the outstanding punitive damages awarded against him in the underlying suit, the insured may not recover against his insurer for a breach of good faith in failing to settle.

Accordingly, the judgment of the trial court is reversed.

STERNBERG, C.J., and DAVIDSON, J., concur.