OPINION OF THE COURT
Franklin R. Weissberg, J.
This action stems from an accident which occurred at the Ansonia Building in Manhattan in March 1990 when a ceiling at the premises of one of the commercial tenants collapsed, killing one person and injuring several others. As a result, wrongful death and personal injury actions were brought against 41 defendants. Ansonia Associates, as a part owner of the building, was one of the named defendants. Ansonia Associates had obtained a commercial general liability insurance policy with the defendant Public Service Mutual Insurance Company (PSM) which was in effect at the time of the accident. The policy had a $1 million limit of liability. In addition to this policy, Ansonia Associates had also obtained excess coverage of $20 million under a policy issued by the defendant Federal Insurance Company.
PSM notified Ansonia Associates that it would defend them in the litigation and thereafter retained counsel, Cyperstein & Gerstner (C&G), to do so. In May 1996, PSM replaced C&G with the law firm of Torino & Singer (T&S). In October 1996, T&S advised PSM that the liability of Ansonia Associates was likely to be substantial if the matter went to trial and that the litigation should therefore be settled. Counsel advised PSM that the codefendants had worked out a settlement under which Ansonia Associates would pay $375,000. PSM refused to accept such a settlement.
*640 The other codefendants subsequently settled with the plaintiffs therein, leaving Ansonia Associates as the sole remaining defendant. Prior to trial, PSM authorized a settlement offer of $130,300 which the plaintiffs rejected. Although Ansonia Associates urged PSM to make a more substantial offer, the company refused. A trial on the issue of liability was then held and, on November 1, 1996, the jury returned a verdict finding Ansonia Associates 80% liable for compensatory damages, as well as subject to punitive damages. Ansonia Associates again urged PSM to settle the matter so as to avoid a trial on the assessment of compensatory and punitive damages. PSM and Federal Insurance allegedly refused to participate in any such settlement discussion. Instead, PSM directed T&S to appeal the jury verdict on liability.
During this period, another law firm, Hutton Ingram Yuzek Gainen Carroll & Bertolotti (Hutton Ingram), had assisted both C&G and then T&S in their defense of Ansonia Associates. At some point, Hutton Ingram broke off from this joint defense and agreed to negotiate a settlement on behalf of Ansonia Associates without PSM’s approval. On June 26, 1997, the plaintiffs therein and Ansonia Associates entered into a stipulation of settlement and release which provided for payments totaling $1.5 million. The agreement specified that this amount was attributable solely to compensatory damages. Both PSM and Federal Insurance have refused to contribute to this settlement.
In the present action, the plaintiff Ansonia Associates Limited Partnership, as the successor-in-interest to Ansonia Associates, seeks to recover the $1.5 million it paid to settle the earlier litigation, as well as the attorney’s fees it incurred in its retention of Hutton Ingram to negotiate the settlement. The defendants have moved for summary judgment dismissing the complaint. They argue that the plaintiff is not entitled to any insurance proceeds because the $1.5 million settlement amount actually covers punitive damages and the public policy of this State prohibits an insurer from paying for any punitive damages which its insured may incur. The defendants also argue that, in violation of the terms of their respective insurance policies, the settlement was entered into without their approval and that they are not therefore responsible for paying for such unauthorized settlements.
DISCUSSION
The complaint herein is based on the plaintiff’s allegation that the defendants acted in bad faith in refusing to settle the *641 litigation for a reasonable amount. The plaintiff alleges that it was therefore forced to settle the matter on its own, without the defendants’ approval and for an amount far in excess of what it could have earlier settled for had the defendants acted in good faith.
It is well established that an insurer may be held liable for damages to its insured for the bad-faith refusal of a settlement offer. (See, Pavia v State Farm Mut. Auto. Ins. Co., 82 NY2d 445, 452 [1993].) Such bad faith stems from the fact that “When confronted with a settlement offer within the policy limits, an inherent conflict arises between the insurer’s desire to settle the claim for as little as possible, and the insured’s desire to avoid personal liability in excess of the policy limits.” (See, Smith v General Acc. Ins. Co., 91 NY2d 648, 653 [1998].) The damages recoverable in an action based on an insurer’s bad-faith refusal to settle are generally measured by “ ‘the amount for which the insured becomes charged in excess of his policy coverage’” (Soto v State Farm Ins. Co., 83 NY2d 718, 723 [1994], quoting from 7C Appleman, Insurance Law and Practice § 4711, at 414 [Berdal ed]).
Where, however, a portion of the amount for which the insured becomes charged represents an award of punitive damages, an application of the “bad-faith” principle so as to make the insurer liable for such punitive damages would be inconsistent with the State’s public policy precluding indemnification for punitive damages. (See, Soto v State Farm Ins. Co., 83 NY2d, supra, at 724.) In Soto, the Court of Appeals ruled that regardless of how egregious the insurer’s conduct had been in relation to an available pretrial settlement opportunity, “the punitive damages awarded against an insured in a civil suit are not a proper element of the compensatory damages recoverable in a suit against an insurer for a bad-faith refusal to settle.” (83 NY2d, at 725.)
Here, the mere fact that the settlement at issue described the $1.5 million as covering only compensatory damages is not dispositive. Since the jury had found Ansonia Associates liable for punitive as well as compensatory damages, it is entirely possible, if not likely, that at least some of the settlement amount represented punitive damages. This issue raises a question of fact which can only be resolved at trial. Any amount which represented punitive damages is, under Soto (supra), not recoverable in this lawsuit. Any amount which represented compensatory damages is recoverable if the plaintiff can establish at trial that it unnecessarily incurred the obligation to pay this amount because of the defendants’ bad-faith conduct.
*642 The defendants’ contention that they are entitled to summary judgment because they are not contractually obligated to pay anything towards a settlement which they never approved is without merit. The New York rule is that where an insurer improperly refuses to represent its insured in a lawsuit, the insured may enter into a reasonable settlement of the claim and then seek reimbursement from the insurer even though the policy precludes liability for settlements made without the insurer’s consent. (See, Rosen & Sons v Security Mut. Ins. Co., 31 NY2d 342, 347 [1972]; see also, Matter of Automobile Ins. Co. v Stillway, 165 AD2d 572, 574 [1st Dept 1991].) If the defendants here acted in bad faith in refusing to settle the litigation against Ansonia Associates prior to trial, the fact that the plaintiff went ahead and settled the matter without the' insurers’ permission would not eliminate the defendants’ contractual obligation on the policies which they respectively issued to the plaintiff.
Finally, the plaintiff seeks to recover the legal fees it incurred in retaining Hutton Ingram to negotiate a settlement on its behalf. It claims that it did so only because the defendants, acting in bad faith, would not permit T&S to negotiate a reasonable agreement. In New York, “When a conflict of interest exists between an insured and the insurer which is obligated to defend, the remedy is to permit the insured to select defense counsel, with the reasonable cost of the defense to be borne by the insurer.” (Ladner v American Home Assur. Co., 201 AD2d 302, 304 [1st Dept 1994].) If, in fact, the defendants acted in bad faith and their refusal to authorize T&S to seriously negotiate a settlement was the result of a conflict of their interests with the interests of the plaintiff, they should be responsible for the payment of Hutton Ingram’s legal fees. As noted previously, this issue of fact can only be resolved at trial.
Accordingly, the defendants’ motions for summary judgment are denied. The papers submitted to the court raise triable issues of fact as to whether the defendants acted in bad faith and whether any of the $1.5 million settlement amount represented unrecoverable punitive damages.
The parties shall appear before the court in room 248, 60 Centre Street, New York, New York, on November 9, 1998 at 11:30 a.m. for a status conference.